## WILLIAM J. HISS

*v.*

## WILLIAM J. HISS, Jr. *et al.*

*Opinion filed June 19, 1907—Rehearing denied October 9, 1907.*

1. STATUTE OF FRAUDS—*contents of lost writing declaring trust may be proved by parol.* Where the writing relied upon by the complainant in a bill to declare a trust as satisfying the Statute of Frauds has been lost or destroyed, or where the party in whose possession the writing is or should be refuses to produce it or denies its existence, the contents of the instrument may be shown by parol proof which is reasonably clear and certain in character.

2. TRUSTS—*a trust may be manifested by a will of the grantee.* A will executed by a grantee stating that the real estate conveyed by the deed was conveyed to him in trust for the payment to the grantor of a certain annuity during the latter's lifetime sufficiently manifests the existence of the trust within the meaning of the Statute of Frauds.

3. SAME—*when grantee has power to declare trust.* While one who purchases trust property from the trustee has no power to declare a trust or fasten a charge upon the property without the consent of the beneficial owner, yet if the latter joins in the deed from the trustee the purchaser acquires both the legal and beneficial interest, and may declare a trust as effectually as though he had derived title from any other source.

4. SAME—*what is sufficient consideration for annuity.* Where a trustee holds the legal title to property and is entitled to compensation for its care and management, his conveyance of the property to his son with the consent of the beneficiary, who joined in the deed and desired the conveyance to be made, coupled with the assignment of trustee's life insurance policies to the grantee, constitutes consideration for the grantee's agreement to pay the trustee an annuity.

5. EVIDENCE—*when contract and will may be read together as showing existence of trust.* A contract executed by the grantee in a warranty deed whereby he personally agrees to pay the grantor an annuity, and a will executed by him at the same time stating that the land had been conveyed to him in trust for the purpose of paying the annuity, may be read together as showing the existence of the trust.

6. PLEADING—*demurrer to evidence in chancery is not proper practice and should not be considered by the court.* Where the issues of fact in a chancery case are tried before the chancellor and without a jury, and where the parties are not entitled to a jury trial as matter of right under some statute of the State providing for a trial by jury, a demurrer to the complainant's evidence is anomalous and not recognized by the rules of chancery practice, and where such course is pursued the demurrer should not receive the consideration of the court.

HAND, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

WHEELER, SILBER & ISAACS, for appellant.

COLSON & JOHNSON, (H. G. COLSON, of counsel,) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the decree of the superior court of Cook county dismissing for want of equity a bill filed therein by appellant against two of his sons, the appellees, for the purpose of fastening a trust upon certain real estate in that county for the payment to appellant of the sum of $750 per annum, payable in equal monthly installments on the first day of each month during his lifetime.

Edward Raymond Ames, of Baltimore, Maryland, died in April, 1879, leaving a last will and testament, making appellant, who was his son-in-law and then employed in the pension department at Washington, D. C., his executor and trustee. To the trustee was devised the legal title to all the

testator's estate in trust and special confidence, to keep the same at all times safely invested, collect the income, pay out of the same bequests contained in the will and all charges for taxes, repairs, insurance and "the proper management of said property," the balance of the income to be payable to Anna Ames Hiss, daughter of testator and wife of the appellant. Testator devised and bequeathed to his widow certain property for life, including an annual income of $2000, and to his daughter Laura an annuity of $600 per annum during life. He also made one or two minor bequests, and subject to the foregoing he devised and bequeathed all his property to Anna Ames Hiss, his daughter above mentioned, with power to sell and dispose of the same and convert the proceeds to her own use.

Appellant qualified and accepted the trust. The testator's widow and his daughter Laura survived him but a few years. The property at the death of the testator is said to have been worth an amount somewhat, though not greatly, in excess of $100,000. The estate became involved in litigation over the validity of the will, and a large amount of money was paid by the executor and trustee in compromise of that litigation. The income from the property, together with the salary earned by appellant, was used in supporting the family of appellant, and the principal of the estate was depleted, part of it probably being used for living expenses of the family and a part lost through bad investments, until in 1899 the only property of the Ames estate remaining was certain realty situated in South Chicago. At the testator's death there was forty acres of that real estate. Small portions thereof have since been sold and the part remaining is the real estate involved in this suit, which has greatly increased in value since 1879 and is estimated to be now of the value of from $100,000 to $125,000 over and above the amount of a mortgage encumbrance placed thereon since the death of Ames. This property has never produced a large income. A great portion of it is unimproved, and it

has been subdivided and specially assessed, so that the income has been little, if any, greater than the carrying expenses. In 1899 appellant with his wife and their family were residing at East Orange, New Jersey. Appellant in that year, without his family, came to Chicago, where he has since remained engaged in managing this property. His only other occupation has been the sale of an article on commission, from which, however, his income has been small, and the family has been supported and appellant's expenses paid from that income, from rentals derived from the real estate and from money received from the sales of portions of the real estate.

In April, 1905, appellant's son Berry Hiss, a man of mature years, came to the office of Mead & Coe, a firm engaged in the real estate business in Chicago, where appellant officed, and sought to induce the appellant to convey the South Chicago property to him, and after some controversy told appellant that if he refused, the wife of appellant would get a divorce from him within four weeks and he (appellant) would be "walking the streets on his uppers." Appellant declined to make the conveyance, and shortly thereafter his wife filed in the courts of Cook county against appellant a bill for divorce upon the ground of adultery and a bill for an accounting in reference to the trust estate. At the time of the filing of those bills the age of the wife was seventy-one years and that of appellant seventy-three years. After that litigation was under way, negotiations in reference to the conveyance of the real estate took place between appellant and his sons, Berry and William J. Hiss, Jr. It is evident that the litigation in the name of the mother was instituted as a result of the sons' dissatisfaction with the father's management of the property. During the time appellant had been living in Chicago he and his wife had corresponded frequently and conferred in that way about the management of the property, and she never manifested any disapproval of his acts prior to the filing of the bill for an

accounting. In June, 1905, he finally agreed with his son William, who was then thirty-five years of age and a resident of New York City, to convey the property to him if the wife would join in the deed. The son was to hold the property in trust for the payment to appellant of the sum of $750 per annum, payable in monthly installments of $62.50 on the first day of each and every month, and in trust for the support of the family at East Orange, then consisting of appellant's wife and three daughters. The father also agreed to assign to this son his interest in certain policies of insurance upon his own life for an aggregate sum of $15,500, which were payable, however, to appellant's wife. The son William, on his part, agreed that he would procure a dismissal of the bill for divorce and the bill for accounting. While the negotiations were pending appellant wrote to his son Berry a letter, from which the following language is quoted: "I shall carry out my promise to prepare the deeds you wish, provided I see in advance the declaration of 'trust' which you say your counsel, Donehoo, will draw up. * * * If the declaration of 'trust' is in legal form after examination by my counsel, I shall prepare the papers and sign my end of them." The attorney referred to was R. P. Donehoo, who had been in the employ of Berry Hiss, and as solicitor for Anna Ames Hiss had filed the bill for divorce and the bill for accounting against appellant. After an understanding had been reached in reference to the conveyance, William, with the consent of his father, caused Mr. Donehoo to prepare papers to carry out the agreement. Appellant, his son William and Mr. Donehoo met at the office of Mead & Coe on January 27, 1905, to execute the necessary instruments. The son then stated to his father that he had arranged to execute a will, which would protect the father in case of the son's death prior to that of his father. The instruments were then executed. They consisted of an ordinary statutory warranty deed, without any declaration of trust therein, from the father,

in his own right and as trustee, to his son William, in which appellant's wife was to join and in which she did afterward join, conveying the South Chicago property; an agreement in duplicate, which was signed by appellant and his son; and, according to the evidence offered by the complainant, the last will and testament of William J. Hiss, Jr. In reference to the latter document there is some controversy between the parties, which we will later discuss in this opinion. The agreement was in words and figures following:

"*Witnesseth*: This agreement, entered into this 27th day of June, A. D. 1905, between William J. Hiss, Jr., party of the first part, and William J. Hiss, Sr., party of the second part:

"In consideration of the sum of one dollar and other good and valuable consideration, receipt of which is hereby acknowledged, the party of the first part does hereby agree to pay to the party of the second part seven hundred and fifty dollars ($750) a year during the lifetime of the said party of the second part, said amount to be paid in monthly installments of sixty-two dollars and fifty cents ($62.50), payable on the first day of each month, in Chicago, county of Cook and State of Illinois, said payments to begin on the 1st day of July, A. D. 1905.

"It is further agreed, that in the event of the death of the party of the first part during the lifetime of the party of the second part, that the party of the first part will make due provision for payment to the party of the second part of the said annuity heretofore mentioned, payable in the heretofore mentioned monthly installments, until the death of the party of the second part, and the said annuity to be payable out of the estate of the party of the first part.

WILLIAM J. HISS, Jr.,
WILLIAM J. HISS.

William Hoagland, *Witness,*
R. P. Donehoo, *Witness.*"

Later, appellant and his wife assigned the life insurance policies to the son William. Following the transactions in the office of Mead & Coe, the son made payments to the father on account of the agreement above set out, but was soon in arrears, and after being once in default never fully satisfied his obligations to his father. When the payment of August 1, 1905, fell due the son sent $40 enclosed in a letter, stating his inability to send the balance of that installment. The father thereafter corresponded with both

sons in unavailing efforts to get the amount paid which was due him under the agreement, and it appears that Berry was fully advised of the existence of the arrangement by which the annuity of the father was chargeable upon the real estate. On December 16, 1905, William J. Hiss, Jr., wrote his father, stating: "I am unable to send you the money you claim I owe you. * * * It is also impossible for me to state definitely what I can do to assist you in the future. Whatever I do will be done out of pity— not because I owe you any money." On the twenty-second of the same month he again wrote his father, saying: "I cannot answer your questions, because you threatened suit and I don't wish to give my defense away, but assure you in all truth that legally I don't owe you a cent." A little earlier, on November 20, 1905, William J. Hiss, Jr., and his wife had conveyed the real estate in question to Berry Hiss by deed. The consideration for that transfer, according to the testimony of the latter, was "practically nothing."

The bill herein was filed on December 29, 1905, averring the existence of the trust, stating that it was declared by the last will and testament of William J. Hiss, Jr., and that Berry Hiss accepted the conveyance from his brother with full knowledge of the trust, and praying appropriate relief. The sons answered jointly, stating that the agreement to pay the $750 per annum was without consideration, denying the existence of the trust, denying Berry's knowledge thereof, and interposed the Statute of Frauds, requiring all declarations of trust in respect to lands to be in writing, signed by the party declaring the trust, as a defense. A general replication was filed. A hearing was had and the witnesses testified in open court before the chancellor. At the close of the evidence offered by appellant in chief, appellees demurred to the evidence, and upon a consideration of the demurrer the court dismissed the bill for want of equity, and the record is brought here for review by appeal.

Where issues of fact in a chancery case are tried by the chancellor, the parties not being entitled to a trial by jury as a matter of right, a demurrer to complainant's evidence is anomalous to the practice. (*Healy* v. *Simpson,* 133 Mo. 340.) The demurrer of that character interposed in this case should not have received the consideration of the court. Upon the proof taken, the only material question of fact about which there can be any controversy is whether William J. Hiss, Jr., signed any writing which manifests the existence of the trust. A number of letters written and signed by him were introduced, and while many of them acknowledge his indebtedness, we think they do not satisfy the statute. Appellant testified that at the time the deed and agreement were executed in the office of Mead & Coe, William J., Jr., executed his last will and testament, and notice was thereupon served upon the solicitors for appellees to produce that will. They thereupon produced an instrument purporting to be the last will and testament of William J. Hiss, Jr., of even date with the agreement and deed executed in the office of Mead & Coe, attested by E. B. McDowell and J. C. F. Bradley as witnesses, which devises seven-eighths of the real estate in question to the seven brothers and sisters of the testator, each to receive one-eighth, the devises being charged, however, with the payment of $750 per annum to William J. Hiss during his lifetime, which the will provides shall be paid by the brothers and sisters, and the will devises and bequeaths the remainder of the estate to the wife of William J., Jr. Thereupon appellant stated that this will was not the one executed at the time of the signing of the deed and agreement, and counsel for William J. Hiss, Jr., replied that there was no other. Appellant then testified that there was another will; that he read it, and that it was signed by William J. Hiss, Jr., at the time of the execution of the deed and agreement at the office of Mead & Coe and was witnessed by William Hoagland and the attorney, R. P. Donehoo, and that it was

recited therein that Anna Ames Hiss and William J. Hiss had conveyed the property in question to William J. Hiss, Jr., in trust for the payment of an annuity of $750 to his father, William J. Hiss, and by it one-eighth of the real estate was devised to each of the brothers and sisters, subject to the payment of the annuity in question.

William Hoagland, an employee in the office of Mead & Coe, testified that on the occasion in question he was asked to step into the private office to sign as a witness to a will; that when he entered the room he found there, appellant, his son William and Mr. Donehoo; that he signed his name as a witness three times, signing it once to each of three separate documents; that he did not know the contents of either of them of his personal knowledge, but that two of them were identical with each other and the third was supposed to be a will; that Mr. Donehoo also signed each of these instruments as a witness, and that neither McDowell nor Bradley was then present. The deed which was executed at that time does not bear the signature of any attesting witness, and the agreement which was executed in duplicate is attested by Hoagland and Donehoo. The appellant's contention is that the third instrument signed by Hoagland was the will which appellant says was executed on that occasion.

Frank S. Packard testified that he was book-keeper for Mead & Coe, and in their office took the acknowledgment of the deed to William J., Jr., at the time of its execution; that there were then present appellant and his son William, and Mr. Donehoo, and that neither Bradley nor McDowell was there. Neither of the four persons last mentioned was placed on the witness stand in the trial of this cause.

After the production of the will witnessed by McDowell and Bradley, the appellant, by leave of the court, filed an amendment to his bill, alleging that the will last mentioned was executed after the execution of the will mentioned in the original bill, and stating that the later will evidenced a

part, only, of the trust. The court ordered that the original answer stand to the bill as amended.

It is to be observed that the last will and testament of William J. Hiss, Jr., which was produced and which appears to have been witnessed by McDowell and Bradley, impresses on that seven-eighths of the real estate in question which is devised to the brothers and sisters of the son William a trust for the payment of the annuity to the father after the death of the son but does not show that the property was originally conveyed to the son in trust for the payment of that annuity, while the will which appellant swears was witnessed by Hoagland and Donehoo stated that the realty had been conveyed to the son in trust for the purpose last mentioned. We think the testimony of appellant, corroborated, as it is, to some extent, by the testimony of Hoagland and by various facts and circumstances proven on the trial, in the absence of contradiction should have been regarded as sufficient to clearly and certainly establish the fact that William J. Hiss, Jr., signed a will in which it was stated that the real estate in question had been conveyed to him in trust for the payment of an annuity of $750 to his father during the lifetime of the latter. Such instrument, if so signed, sufficiently manifested the existence of the trust. *Whetsler* v. *Sprague, 224* Ill. 466.

When the writing relied upon to satisfy the Statute of Frauds has been lost or destroyed, its contents may be shown by parol proof which is reasonably clear and certain in character. (29 Ency. of Pl. & Pr. p. 875; *McCarty* v. *Kyle,* 4 Coldw. 348.) And the same rule should prevail where the party to the suit who is alleged to have signed the writing, and who has or should have possession thereof, fails to produce it on notice and denies its existence.

Under the will of Ames the legal title to the property was vested in appellant. He was authorized to manage and control the same and was entitled to compensation for so doing. The execution of the deed by him to William J., Jr.,

and the assignment and delivery of the insurance policies by the father to the latter, afforded consideration for the execution of the agreement to pay appellant the annuity.

Appellees' contention that the written agreement providing for the payment of $750 per annum must be regarded as containing all the terms and conditions of the contract, and that appellant cannot, therefore, show the existence of the trust by proving the terms of the will, is not tenable. The agreement is the personal obligation of William J. Hiss, Jr., to pay. The conveyance in trust, if made as alleged by the bill, is in the nature of a security for the payment of the obligation of the latter. The agreement and the will, which appellant swears were signed by his son, (if the will was, in fact, so signed,) were executed at the same time, are parts of the same transaction and may be read together for the purpose of ascertaining the entire undertaking of the parties.

It is, of course, true, that so long as the beneficial title to this property remained in Anna Ames Hiss no trust or other charge could be fastened upon the realty without her consent. She, however, had the right to convey the beneficial interest to any person she saw fit, for any reason satisfactory to her, and when she and appellant conveyed to William J. Hiss, Jr., he became seized of the entire fee, and could declare a trust as effectually as though he had acquired the property from any other source.

The decree of the superior court will be reversed, and in view of the somewhat unusual practice pursued by that court in disposing of the controversy, the cause will be remanded to that court for further proceedings not inconsistent with the views herein above expressed.

*Reversed and remanded.*

HAND, C. J., and CARTWRIGHT, J., dissenting.