**YOUNG v. HANDWORK et al. (two cases).**

Nos. 9922, 9923.

United States Court of Appeals
Seventh Circuit.

Dec. 12, 1949.

Rehearing Denied Feb. 10, 1950.

Horace A. Young, Chicago, Ill., pro se.

Francis L. Daily, Joseph A. Conerty Robert McClory, Chicago, Ill. (Daily, Dines, White & Fiedler, Chicago, Ill., of counsel), for Handwork and others.

Before MAJOR, Chief Judge, and DUF-FY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

Appeal in No. 9922 is from an order entered May 5, 1949, on defendants' amended motion, dismissing plaintiff's cause of action with prejudice. Thus the court's action was predicated solely upon the pleadings, which consisted of the complaint, defendants' amended motion to dismiss and certain exhibits consisting of two trust agreements which the court apparently considered as attached to and forming part of the complaint.

Plaintiff, as a bankruptcy trustee, filed his original complaint in his plenary action in the District Court on December 26, 1946. Jurisdiction was claimed by reason of diversity of citizenship between the bankrupt, alleged to be a resident of Michigan, and the defendants, trustees under the Joslyn trusts,[1] alleged to be residents of Illinois. It was also alleged that the matter in controversy exceeded, exclusive of interest and costs, the sum of $3,000. The complaint alleged the appointment of plaintiff as a bankruptcy trustee, that the bankrupt's vested equitable life estates under the Joslyn trusts "were transferable within the meaning of Section 70(a) (5) of the Bankruptcy Act of 1938 [11 U.S.C.A. § 110, sub. a (5)] * * *, and the laws, statutes and decisions of the United States of America and of the State of Illinois," that they were therefore administrable assets as a part of the bankruptcy estate, and that plaintiff as the bankruptcy trustee "became and is now vested with the sole ownership of said vested equitable life estates * * * by operation of law."

The complaint contains three counts, the first of which alleges that the defendants as trustees of the Joslyn trusts have received cash income, proceeds and avails from said vested equitable life estates of which more than $300,000 had been distributed to the bankrupt and that an accounting would be necessary to determine the amount thereof. This count prayed for discovery, an accounting and a decree for the amount found due the bankruptcy trustee. Count 2 alleges that the defendant trustees hold more than $89,000 of cash income, proceeds and avails of the vested equitable life estates, "sole title to which has been and is now vested in plaintiff" as the bankruptcy trustee. Count 3 alleges that plaintiff is entitled to an injunction restraining the defendant trustees from transferring the income, proceeds and avails of said vested equitable life estates to the bankrupt or to any third person for or on his behalf.

Defendants on March 19, 1948 filed what is designated as their original motion to dismiss, predicated upon three grounds: (1) that there was no diversity jurisdiction in the District Court because "The complaint shows upon its face that at the time of filing of his petition in bankruptcy [twelve years earlier, in February 1936] that the said George R. Joslyn was a citizen and resident of Illinois and that all of the defendants were and are citizens and residents of Illinois;" (2) that the Bankruptcy Court by an order of June 1, 1948 (appealed from and reversed by this court on December 3, 1948, In re Joslyn's Estate, 171 F.2d 159) had "determined and finally and conclusively adjudicated" the issues raised in the original complaint and the same are, therefore, res adjudicata, and (3) that "The complaint discloses upon its face that the plaintiff is not entitled to any of the relief prayed for * * * in that the trust estates and the proceeds thereof sought to be recovered by the plaintiff are protected while in the possession or control of the defendants against the claims of creditors of George R. Joslyn or a bankruptcy trustee acting in their behalf by Section 49 of the Illinois Chancery Act (Sec. 49, Ch. 22, Ill.Rev.Stats.1947)."

On May 5, 1949 (the day the order appealed from was entered), the defendants filed what is designated as an amended motion to dismiss the complaint, in which it is alleged among other things that the complaint upon its face, together with the trust agreements, shows that "Marcellus L. Jos-

1. The term Joslyn trusts, sometimes referred to as the Joslyn family trusts, will be used here as they have been by the parties to describe two trusts created by Marcellus L. Joslyn and his wife, the late Alice Newell Joslyn, for certain designated beneficiaries, one of whom was George R. Joslyn, the bankrupt.

lyn and Alice N. Joslyn, father and mother respectively of George R. Joslyn, created in good faith and with their own property two irrevocable trusts dated August 14 and August 15, 1935, * * * and that the plaintiff is not entitled to any of the relief prayed for against the defendants," assigning the same reason as alleged in the original motion to dismiss, that is, the provisions of Sec. 49 of the Illinois Chancery Act. In this amended motion to dismiss, no issue was made and no question raised as to diversity jurisdiction.

The court in its order of dismissal found, among other things, "that the Court has jurisdiction of the parties hereto and of the subject matter hereof," and that the amended motion to dismiss should be allowed for failure to state a cause of action for the following reason:

"That under the undisputed facts as disclosed by the pleadings, the interests of George R. Joslyn in the Joslyn Family Trusts and the income therefrom in the hands of and under the control of the Joslyn Trustees fall clearly within the protection of Section 49 of the Illinois Chancery Act (Sec. 49 of Ch. 22, Ill.Rev.Stats. 1947) and may not be reached by creditors nor a bankruptcy trustee acting in their behalf and that this question of law is free from doubt, and

"That said interests of said George R. Joslyn in said trust estates are not property within the meaning of Section 70 of the Bankruptcy Act."

On May 9, 1949, plaintiff filed in the clerk's office his notice of appeal, together with the statement of points to be relied upon. Subsequently, on the 16th day of May, 1949, defendants filed what is designated as "Amendment to Amended Motion to Dismiss Complaint," in which they again, as in their original motion, alleged that there was no diversity of citizenship between the plaintiff and the defendants. On the same day, the court entered an order denying the motion on the ground that it appeared to the court "that said amendment is immaterial and that the Court lacks jurisdiction in connection therewith." On May 19, 1949, defendants filed what is termed a "Notice of Cross-Appeal." This so-called cross-appeal by the defendants is No. 9923 in this Court.

So far, we have purposely confined our statement of the procedure below so as to bring us directly to defendants' contention by reason of this cross-appeal, which we think may be disposed of in short order. It appears evident under Sec. 23, sub. b, of the Bankruptcy Act, Title 11 U.S.C.A. Sec. 46 sub. b, that jurisdiction could only be obtained by diversity without "consent of the defendant," as therein provided.

The question of the District Court's diversity jurisdiction arose at the final hearing on May 5, 1949, and, in our judgment, the record conclusively demonstrates two things, (1) that the defendants admitted the facts necessary to show diversity, and (2) that they consented to the court's jurisdiction. The colloquy which took place in court at that time, in abbreviated form, shows that at first defendants, in response to an inquiry from the court, denied that diversity jurisdiction was conceded, whereupon the court stated, "I wish you folks [defendants] would make up your minds. * * * The fact must be that, by admission in open court or otherwise, there is diversity of citizenship. Otherwise any order I entered would be a nullity. Make up your mind which way you want to jump." The court refused to enter an order so long as the diversity of citizenship was contested, whereupon defendants' counsel asked for a recess which was taken, after which a colloquy, a portion of which we set forth in a footnote [2], took place between the

2. "Mr. McClory: If the Court please, we have decided to withdraw the subject of want of jurisdiction from our motion, and I would like leave to withdraw the amended motion and to revise it to that extent, and I can have it back here in the course of an hour in the revised form along that line too.

"The Court: Do you withdraw your denial of diversity of citizenship?

"Mr. McClory: Yes.

"The Court: Do you wish to amend your answer to that effect?

"Mr. McClory: Yes, your Honor.

"The Court: That may be done. That takes the question of diversity of citizenship out of the case, as it has been alleg-

court and defendants' counsel.

On May 16, 1949, the date of the entry of the order from which the cross-appeal comes, the court in a colloquy with defendants' counsel stated· as one of his reasons for denial of leave to file the amendment to the amended motion to dismiss as follows:

"Another ground is that there is a shift of position on your part, it having been admitted by everybody in open court the court had jurisdiction, and place of residence is a question of fact and not a question of law, and that question of fact has been settled in this court. Diversity of citizenship has been found as a fact."

We think the order of May 16, 1949 was correct. From what we have shown, it conclusively appears that while the defendants in their original motion to dismiss raised a question of diversity, they subsequently, by omitting such question from their amended motion and particularly by their statements in open court, admitted facts which disclosed diversity just as it had been alleged in plaintiff's complaint. More than that, the colloquy in court shows that the defendants consented to jurisdiction, which is sufficient under the statutory provision above referred to. Having invited—in fact, requested—the court to take jurisdiction, we can see no justification, after the court had rendered its decision and after the plaintiff had served his notice of appeal, for an attempted renewal by the defendants of the diversity issue. More than that, we are left in the dark as to the purpose of defendants' cross-appeal, inasmuch as they won below on the merits.

We hold that the court for the reasons stated had jurisdiction, and the order of May 16, 1949, from which the cross-appeal comes in No. 9923, is affirmed.

■ We now turn our attention to plaintiff's appeal in No. 9922. Numerous errors are assigned by the plaintiff which may be summarized as (1) the District Court should have granted a change of venue in accordance with plaintiff's affidavit of bias and

prejudice, (2) the court committed reversible error in striking plaintiff's amendment and supplement to his complaint which consisted of counts 4 and 5, and (3) the court erred in his decision on the merits of the case. Inasmuch as the Joslyn bankruptcy proceeding has been long pending and prolific of much litigation, as is shown by two prior appeals to this court (see 168 F.2d 803 and 171 F.2d 159), we are urged by the plaintiff to decide the case on its merits, which involves solely a question of law. Under existing circumstances, we think this should be done and shall proceed accordingly.

As already noted, plaintiff's complaint is predicated upon Sec. 70, sub. a(5), Title 11 U.S.C.A. § 110, sub. a, which provides:

"Section 70. Title to Property—a. The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankrupcy * * * to all * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *."

It will be noted, and this is material, that the foregoing language creates two separate classifications of "property" which are subject to administration in bankruptcy, namely,

"(1) Property, including rights of action, which prior to the filing of the petition he [the bankrupt] could by any means have transferred,

OR

"(2) which might have been levied upon and sold under judicial process against him [the bankrupt], or otherwise seized, impounded or sequestered."

---

ed in the complaint that there is diversity of citizenship and it now stands admitted. Is that correct?

"Mr. McClory: Yes.

"The Court: That there is diversity of citizenship?

"Mr. McClory: Yes.

"The Court: Very well."

Plaintiff's contention is that the bankrupt's interest in the trust estate was property "which prior to the filing of the petition he could by any means have transferred." The Bankruptcy Act of 1898, which was in effect at the time the bankrupt filed his petition in the instant matter, defined a transfer, Sec. 1(25), as follows:

" 'Transfer' shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security." [3]

The first important question to be determined is whether the bankrupt's interest in the trusts could by him have been transferred prior to the filing of his petition in bankruptcy. If so, it seems plain that under the Bankruptcy Act such interest was property, title to which vested by operation of law in plaintiff as the trustee in bankruptcy. Subsequently we shall consider defendants' contention that such a result was prohibited by Sec. 49 of the Illinois Chancery Act. There is much controversy inasmuch as this is a diversity action as to whether a federal court is bound to follow the state law both in a determination of whether the bankrupt's interest in the trusts was transferable and, if so, whether the federal court is bound to follow a state statute which it is contended, in any event, prohibited such transferability. We shall also subsequently consider this question insofar as we think it is relevant.

At this point it seems important to describe further the trust agreement wherein the bankrupt was one of the beneficiaries. Such description contained in defendants' brief appears to be fair, and we use it. The Joslyn family trusts were created by Marcellus L. Joslyn and his wife, the late Alice Newell Joslyn, in August, 1935. At that time the parents conveyed stock, which theretofore belonged to them, to Bently S. Handwork, Ralph C. Boozer and Philip W. Lotz, in trust for the benefit of the donors' children and grandchildren. United Char-

ities of Chicago was in each instance named as contingent remainderman. George R. Joslyn (who subsequently in February, 1936, became the bankrupt) was named as a beneficiary in the income of a part of each of the trusts and was treated exactly the same as his two brothers and one sister. The trust instruments required that "The Trustees shall pay over * * * the net income * * * [to each of the donors' children] during the remainder of his [or her] lifetime." Neither the bankrupt, George R. Joslyn, nor any of the beneficiaries for life were given any interest in the trust corpus nor did they have any voice in the management or conduct of the trusts. It was expressly provided in each of the trust instruments that "The Trustees shall take and have vested in them the entire legal title in and to the trust estate, and shall have full management and control thereof * * *."

That the bankrupt acquired vested equitable life estates in the two Joslyn trusts is, as we understand, not controverted by the defendants. In any event, it plainly appears that such was the case. The question as to whether Joslyn could prior to bankruptcy have transferred such interest is to be determined by state or federal law is not too important because it has been many times decided by the courts of both jurisdictions that he could; in fact, we know of no case which has held to the contrary.

The respective rights of the trustee and the beneficiary in such a trust is aptly stated in Merchants' Loan and Trust Co. v. Patterson, 308 Ill. 519, 530, 139 N.E. 912, 916, as follows:

"In a court of law the legal estate of the trustee, as a general rule, has the same properties, characteristics, and incidents as if the trustee were the absolute, beneficial owner, and he may so deal with it. In equity, on the other hand, the cestui que trust may deal with his equitable estate as property. He is the beneficial and substantial owner, and if under no disability may sell and dispose of his estate, and any legal

---

3. This definition was amended by the 1938 Act, Sec. 1(30), so as to include a "conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise."

conveyance will have the same operation upon the equitable estate as a similar conveyance of the legal estate would have at law upon the legal estate."

In Binns v. La Forge, 191 Ill. 598, 608, 61 N.E. 382, 386, the court stated:

"* * * there being no restriction in this will, there is no reason why Gertrude M. Talbott might not in equity assign said income, or a part thereof, to James Ryan, as security for a debt which she owed him." And in Hummel v. Cordwell, 390 Ill. 526, 62 N.E.2d 433, a decision much relied upon by defendants upon another phase of the instant case which will be later discussed, the court recognized that a vested equitable life estate quite similar if not identical with that owned by the bankrupt, George R. Joslyn, was voluntarily transferable by the beneficiary. Other Illinois cases to the same effect are Hiss v. Hiss, 228 Ill. 414, 424, 81 N.E. 1056, and Blair v. Linn, 274 Ill. App. 23.

In Blair v. Commissioner, 300 U.S. 5, 13, 57 S.Ct. 330, 333, 81 L.Ed. 465, the court stated:

"The will creating the trust entitled the petitioner during his life to the net income of the property held in trust. He thus became the owner of an equitable interest in the corpus of the property. [Citing cases, including Merchants' Loan and Trust Co. v. Patterson, supra.] * * * The interest was present property alienable like any other, in the absence of a valid restraint upon alienation. [Citing cases.] The beneficiary may thus transfer a part of his interest as well as the whole."

· In Brown v. Fletcher, 235 U.S. 589, 599, 35 S.Ct. 154, 157, 59 L.Ed. 374, the court stated:

"The beneficiary here had an interest in and to the property that was more than a bare right and much more than a chose in action. * * * His estate in the property thus in the possession of the Trustee, for his benefit, though defeasible, was alienable to the same extent as though in his own possession and passed by deed. [Citing cases.] The instrument by virtue of which that alienation was evidenced,—whether called a deed, a bill of sale, or an assign-ment,—was not a chose in action payable to the assignee, but an evidence of the assignee's right, title, and estate in and to property."

Thus, we have no difficulty in determining that the vested equitable life estate which the bankrupt had in the trusts was property within the meaning of Sec. 70, sub. a(5) of the Bankruptcy Act and that it was transferable by his voluntary act or, in the language of the statute, it was property which he "could by any means have transferred." Thus, the conclusion in the order appealed from, "That said interests of said George R. Joslyn in said trust estates are not property within the meaning of Section 70 of the Bankruptcy Act," is clearly erroneous. It follows that the title to such property vested by operation of law in the bankruptcy trustee unless such result is prevented or prohibited by some other law.

■ This brings us to a consideration of the more difficult phase of the case. As already noted, the defendants both in their original motion and in their amended motion to dismiss alleged that plaintiff was not entitled to the relief sought for the reason that the bankrupt's interest in the trust estates and the proceeds thereof were protected while in the possession and control of the defendants against the claims of creditors and the trustee in bankruptcy by reason of Sec. 49 of the Illinois Chancery Act, which provides:

"Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a complaint against such defendant, and any other person, to compel the discovery of any property or thing in action, belonging to the defendant, and of any property, money, or thing in action due to him, or held in trust for him, and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof to the defendant, *except when such trust has, in good faith, been created by, or the fund so held in trust has proceeded from some person other than the defendant himself.*" (Italics supplied.)

The defendants vigorously contend and the court below held that the situation comes squarely within the exception to this provision (the italicized language), and that such being the case the vested life estates owned by the bankrupt did not pass to his trustee.

At this point it may not be irrelevant to observe that there was neither proof nor a finding in the court below that the trusts in controversy were created "in good faith." The most that appears in the record in this respect is that the defendants in their amended motion to dismiss made an allegation to that effect. In a colloquy between the court and counsel, it appears that the plaintiff urged that the defendants be required to prove that the trusts were created "in good faith," and that they carried the burden of making such proof. While we find no authority where the question has been decided, we are of the view that the plaintiff was correct. It hardly seems conceivable that the defendants can rely for protection upon a provision of a statute without in some manner alleging and proving facts which bring them within its terms, and we doubt if the question of "good faith" could properly be raised by a motion to dismiss the complaint. We think it should have been raised by an answer or some pleading which would have placed this vital question in issue so that both sides would have had an opportunity to offer proof relative thereto. The court appears to have been of the view that good faith was to be presumed or, in any event, that it appeared from the face of the complaint, together with the trust agreements.

In this connection and in fairness to the plaintiff, we think it was this attitude on the part of the court which motivated the plaintiff in the filing of amended or supplemental counts 4 and 5. By these amended counts plaintiff sought to put in issue the good faith creation of the trusts. For this purpose there was attached to count 5 a copy of a report made by a Special Master in which it was found that George R. Joslyn committed a fraud upon his creditors in numerous respects by filing his voluntary petition in bankruptcy and thereafter obtaining a discharge. It was upon this Master's report that the court, on May 20, 1946, entered its order reopening the bankruptcy proceedings. As already shown, the court dismissed and expunged from the record both amended counts 4 and 5, together with the exhibits thereto attached. We need not dwell upon the action of the court in this respect. The point is that the plaintiff, in our judgment, was entitled in some manner to make an issue of the good faith creation of the trusts. The court, however, not only failed to require the defendants to show affirmatively that the trusts were thus created but denied to plaintiff the right to make such issue or to make proof in negation of the good faith creation.

Neither do we think that good faith can be ascertained and found merely from the complaint or from the face of the trust agreements, as the court below indicated. And while good faith is presumed in many situations, we are of the view that the law does not indulge in such tolerance where it is sought to seek advantage or protection of a statute which contains as its essential ingredient the element of good faith. However, if we are to decide the case on its merits, we must, as did the court below, indulge in the presumption that the trusts were created in "good faith."

Having concluded that the bankrupt's interest in the trusts was transferable and, therefore, administrable under the bankruptcy law, we shall now examine defendants' contention that such interests are immunized by the provision of the Illinois Chancery Act above quoted. Defendants in support of this contention cite numerous cases, the most relevant of which are Spindle v. Shreve, 111 U.S. 542, 4 S.Ct. 522, 28 L.Ed. 512; Eaton v. Boston Safe Deposit and Trust Co., 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723; Baumgarden v. R. F. C., 7 Cir., 131 F.2d 741, and Hummel v. Cardwell, 390 Ill. 526, 62 N.E.2d 433.

It is true that in Spindle v. Shreve, supra, it was held that the interests of the bankrupt were "not liable to be appropriated to the payment of the debts of the beneficiary" under Sec. 49 of the Illinois Act. The opinion indicates that the court had before it a spendthrift trust. It was pointed out

that such trusts were proper, 111 U.S. page 547, 4 S.Ct. page 524, "so that it shall not be subject to alienation, either by voluntary act on his part, or *in invitum,* by his creditors." In contrast, in the instant case there was no inhibition against voluntary alienation and, as we have shown, the beneficiary had a right to transfer his interest in the trusts. Another point to be noted in the Spindle case is that it was decided in 1884, under the Bankruptcy Act of 1873, where the only property which was administrable in bankruptcy was that which a judgment creditor could take on "levy and sale, upon execution or other process or order of any court by the laws of the State." Rev.St. § 5045. Or, conversely, under the Act of 1873, property was not administrable in bankruptcy unless it was subject to seizure upon execution under state law, and it was held that Sec. 49 prevented such seizure of the beneficial interest in the trust before the court. The character of property which is administrable in bankruptcy, however, has been broadened by later legislation. By the Act of 1898, and in all amended Acts since that time, there is included as administrable property the provision upon which the complaint in the instant case is predicated, that is, property which the bankrupt could by any means "have transferred."

In Eaton v. Boston Safe Deposit and Trust Co., supra, while the opinion does not clearly reveal the situation, it appears that the court was considering a spendthrift trust. At any rate, the trust instrument contained a provision, "said income to be free from the interference or control of her [the beneficiary] creditors." The court said, 240 U.S. page 428, 36 S.Ct. page 391, "It is established law in Massachusetts that such trusts are valid and effective against creditors * * *." It is evident that the court was not considering a situation where the beneficiary had the power of alienation, as in the present case, because the court also stated, 240 U.S. page 428, 36 S.Ct. page 391, "If it be true without qualification that the bankrupt could have assigned her interest and by so doing could have freed from the trust both the fund and any proceeds received by her, the argument would be very strong that the statute [Sec. 70(a) (3) of

the Bankruptcy Act] intended the fund to pass."

In Baumgarden v. R. F. C., supra, this court held that under Sec. 49 of the Illinois Act the beneficial interest in the trust was not subject to garnishment. The issue there arose because of an asserted conflict between two provisions of the Illinois statute. No question of bankruptcy was involved and it was, of course, immaterial whether the interest of the beneficiary was voluntarily transferable. In fact, as shown, no such question was present either in the Spindle or Eaton cases.

Hummel v. Cardwell, supra, is the case upon which defendants principally rely. As already noted, the interest of the trust beneficiary was substantially the same as that of the beneficiary in the instant matter, and the Supreme Court of Illinois upheld a voluntary conveyance of the beneficial interest which by agreement of the parties later ripened into a consent decree. In that case, as here, the beneficiary became a bankrupt and the trustee of the estate in a plenary action sought to recover the equitable interest of the beneficiary on the theory that it was transferable under Sec. 70(a) (5) of the Bankruptcy Act. The court denied such recovery. What the court said relative to its holding in this respect is asserted to be dictum, which is probably correct. At any rate, it appears that the interest of the bankrupt (the life beneficiary) had been transferred more than four months prior to the filing of the petition in bankruptcy. Such being the case, it would seem that the trustee could not have recovered in any event and that the court's construction of Sec. 49 of the Illinois Act and of the pertinent sections of the Bankruptcy Act was unnecessary. We are not willing, however, to dismiss this case from consideration on the ground alone that what the court said might have been dictum.

This brings us to the much controverted question as to whether a federal court in a plenary action brought by the trustee where jurisdiction is based upon diversity is bound to follow the decision of a state court. It is the contention of the defendants that such is the case since Erie

Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We shall first refer to what we think are relevant cases prior to Erie v. Tompkins. In Board of Trade of City of Chicago v. Weston, 7 Cir., 243 F. 332, a decision of this court which adopted in the main as its opinion that of the District Court, the question before the court was whether a seat on the Board of Trade was property which passed to the trustee in bankruptcy. The gist of the holding is that while under Illinois decisions the property could not have been levied upon and sold under judicial process, nevertheless it was property which could have been transferred and that it therefore passed to the trustee and was administrable in bankruptcy. The court. 243 F. page 335, made this pertinent observation:

"Now, it would be strange if the dominant grant to Congress to legislate upon bankruptcy and insolvency, and which, when exercised, supersedes state legislation respecting these matters, should nevertheless be subordinate to the right of each state to determine what is or shall be property, subject to the terms of the Bankruptcy Act."

Another case much in point is that of Board of Trade of City of Chicago v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533, where the Supreme Court also had the question as to whether a membership in the Chicago Board of Trade passed to the trustee in bankruptcy under Sec. 70, sub. a (5) of the Bankruptcy Act. This case is important because the court refused to follow a decision of the Illinois Supreme Court which had held that such a membership was not property. The court stated, 264 U.S. page 8, 44 S.Ct. page 233:

"The Supreme Court of Illinois, from which state this Board of Trade derives its charter, has held, in Barclay v. Smith, 107 Ill. 349, 47 Am.Rep. 437, that the membership is not property or subject to judicial sale * * *."

Notwithstanding this holding by the Illinois court, it was held that the membership was an "incorporeal right and property which would pass to the trustee of the bankrupt." The court cites a number of its previous opinions, including Page v. Edmunds, 187 U.S. 596, 23 S.Ct. 200, 47 L.Ed. 318, where it was held, contrary to the decisions of the Supreme Court of Pennsylvania, that a seat on the Philadelphia Stock Exchange was property which passed to the trustee. And the court, 264 U.S. page 9, 44 S.Ct. page 234 quoted from the Page case as follows:

" 'It is not certain whether the learned court [Pennsylvania Supreme Court] intended to say that the seat was not property at all, or not property because it could not be seized in execution for debts. If the former, we cannot concur. The facts of this case demonstrate the contrary. If the latter, it does not affect the pending controversy. The power of the appellant to transfer it was sufficient to vest it in his trustee.' "

The court, still referring to the Page case, stated, 264 U.S. page 10, 44 S.Ct. page 234:

"The court thus held that the question was to be determined by reference to the language of the Bankrupt Act and that the seat was property 'which prior to the filing of the petition he [the bankrupt] could by any means have transferred.' It declined to limit the definition of property under subdivision (5) to such as the state courts might hold could be seized in execution by judicial process. Subdivision (3), vesting in the trustee title to powers which the bankrupt might exercise for his own benefit, manifests a purpose to make the assets of the estate broadly inclusive."

It seems rather clear from these cases and other similar cases which could be cited that the federal courts, at least prior to Erie R. Co. v. Tompkins, were not bound by the decisions of state courts as to what property passes to the trustee in bankruptcy under Sec. 70, sub. a, of the Bankruptcy Act. And it should be kept in mind, as already shown, that the courts of Illinois recognize as property an equitable life interest such as that involved in the instant case.

Defendants seek to distinguish the Johnson case (and similar cases) on the ground that the action there was summary in contrast to plenary action of the instant case.

This point was also emphasized by the Supreme Court of Illinois in Hummel v. Cardwell, supra. While we find no case in point, we see no reason why a construction of the Bankruptcy Act should be made to depend upon the form of the action wherein it is involved. Nor do we see any reason why its construction should be made to depend upon the court where it is involved, that is, in a federal court where jurisdiction is based upon diversity or consent, as here, or in a Bankruptcy Court.

In re Landis, 7 Cir., 41 F.2d 700, is another decision by this court wherein we refused to be bound by the Illinois law as to what constituted property administrable in bankruptcy. In connection therewith, we stated, 41 F.2d page 703:

"* * * we are not to be limited to the Illinois law. The federal courts will construe for themselves the meaning of the word 'transfer' as used in the statute. [Section 1(30) of the Bankruptcy Act.] To hold otherwise would be to subject the federal statutes to as many different constructions as there are states."

Neither do we think that the supremacy of Congress over bankruptcy legislation has been impaired by Erie R. Co. v. Tompkins. As was said in Marine Harbor Properties, Inc. v. Manufacturer's Trust Co., 317 U.S. 78, 83, 63 S.Ct. 93, 96, 87 L.Ed. 64:

"The federal bankruptcy power is, of course, paramount and supreme and may be so exercised by Congress as to exclude every competing or conflicting proceeding in state or federal tribunals. Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370."

In the Kalb case which the court cited, it was held that state statutes and decisions of state Supreme Courts are "not merely erroneous [308 U.S. 433, 60 S.Ct. 346]," but are "void and subject to collateral attack" where they are in conflict with the federal Bankruptcy Act. Wright v. Union Central Life Insurance Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490, is to the same effect. On page 517, of 304 U.S. on page 1033 of 58 S.Ct., the court stated:

"If the argument is that Congress has no power to alter property rights, because the regulation of rights in property is a matter reserved to the States, it is futile. Bankruptcy proceedings constantly modify and affect the property rights established by state law."

We therefore conclude that this court is not bound by the decision of the Illinois Supreme Court in its construction of Sec. 70, sub. a(5) of the Bankruptcy Act. As was said by Judge Walter C. Lindley, in Hodam v. Jordan, D.C., 82 F.Supp. 183, 189, after citing Hummel v. Cardwell, supra, and other Illinois cases:

"Hence, there would seem to be no obstacle to the beneficiary's interest passing to his trustee in bankruptcy. If, under state law, the beneficiary had an equitable vested interest which he could voluntarily transfer, then it should pass to his trustee in bankruptcy, irrespective of the provisions of Section 49 of the Chancery Act."

In so concluding, we are not unmindful of cases where it has been held that the Bankruptcy Court will follow the law of the state as to what constitutes property. We need not be concerned with such cases, however, because, as already shown, the vested life estate of the bankrupt in the trusts in question is property under both the federal decisions and those of the State of Illinois. If such interest was not recognized by the State of Illinois as property capable of voluntary alienation by the beneficiary, a different question might be presented. We are not pressed to the point, however, of making a decision in that respect. And it will be time enough to answer that question when the legislature of Illinois by statutory enactment provides, or its courts hold, that such interest is not property which can be alienated by the beneficiary.

Sec. 49 of the Illinois Act places no restriction and presents no impairment of the right of a beneficiary to voluntarily sell, assign or transfer his equitable vested interest in the trust in question. See Binns v. La Forge, supra, 191 Ill. page 608, 61 N.E. 382. And to construe this section so as to prevent such interest from passing to the trustee in bankruptcy while the state recognizes it as alienable property would pre-

sent a serious challenge to the validity of the state provision. At any rate, such a construction places the state provision in direct conflict with the bankruptcy provision which Congress in the exercise of its paramount power has enacted. To argue that the bankrupt's interest prior to bankruptcy was beyond the reach of creditors under Sec. 49 is beside the issue, but assuming that such was the case the further argument predicated thereon that it also places his interest beyond his trustee in bankruptcy is a non sequiter. If his interest prior to bankruptcy was property subject to voluntary alienation, as it was, Congress has proclaimed that such property shall pass to his trustee in bankruptcy as administrable assets.

We hold that such is the case. The order appealed from in No. 9922 is, therefore, reversed and remanded, with directions to proceed in accordance with the conclusion thus reached.