**Jacqueline R. PIVA, on behalf of herself, and other women similarly situated, Plaintiff,**

v.

**XEROX CORPORATION, a corporation, Defendant.**

**No. 73 1337  WTS.**

United States District Court,
N. D. California.

May 1, 1974.

---

3. Report of the Ad Hoc Advisory Group on the Presidential Vote for Puerto Rico (1971).

Russell Specter, Washington, D. C., Aaron Paul, Barrett, Ferenz, Bramhall, Paul & Klemm, Oakland, Cal., for plaintiff.

Richard Haas, Donald D. Connors, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant.

SWEIGERT, District Judge.

This suit, pursuant to Title VII of the Civil Rights Act of 1964, complains of discrimination in employment on the basis of sex. Plaintiff, Jacqueline Piva, a woman, alleges that defendant, Xerox Corporation, her former employer, discriminated against her unlawfully by, inter alia, paying her less than it paid male employees for performing substantially the same work; requiring her to perform at a higher level than male employees in the same classification and with the same experience and training; and discharging her because of her sex.

Defendant moves to dismiss the complaint on the grounds that plaintiff's claims are barred by the statute of limitations and that the suit lacks equity.

Plaintiff was employed by Xerox Corporation from May 1, 1964 until her discharge on or about June 16, 1970. Within 90 days of the discharge, plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "Commission"). On July 26, 1973, at plaintiff's request, the Commission advised her by letter that an administrative remedy to her complaint had not been accomplished and that she was entitled to institute a civil action in the appropriate federal court within 90 days. This suit was instituted on August 2, 1973, well within that period.

Title VII of the Civil Rights Act of 1964 specifies two jurisdictional prerequisites that an individual must fulfill before he is entitled to file a lawsuit: first, he must file a charge of discrimination with the Commission within a certain number of days (originally 90, now 180) following the occurrence of the unlawful employment practice; and second, he must file a complaint in federal court within a specified period (originally 30 days, now 90 days) following his receipt of a "right to sue" letter from the Commission. If both these prerequisites are met, the federal court is vested with jurisdiction, no matter how much time has elapsed between the filing of the charge and the filing of the complaint. Cunningham v. Litton Industries, 413 F.2d 887 (9th Cir. 1969).

In the instant case, defendant concedes that plaintiff has met both time periods and that this court, therefore, has jurisdiction. However, defendant contends that the instant action is nevertheless barred by the statute of limitations, "for it is a commonplace that a court may have jurisdiction although the particular claim presented to the Court is subject to a plea of limitations." (D. Memo in Support of Mo. to Dismiss, p. 3). Defendant's argument is that Title VII does not contain an express statute of limitations and that the time periods mentioned above do not amount to one; that in the absence of such a provision, the federal court must borrow from the law of the state in which it sits the analogous statute of limitations; that in the instant case, the analogous statute is § 338(1) of the Calif.Code of Civil Procedure, providing a limitation period of three years; that this period having been exceeded in the pending case, the action is barred.

In support of this position, defendant cites Walton v. Kellogg Co., 2 E.P.D. 10,250 (W.D.Tenn.1970), in which the court, proceeding on the assumption that Title VII does not contain an over-all limitation period; held that Title VII actions were subject to the bar of the analogous state statute of limitations. Other courts, however, have reached the opposite conclusion. In Jackson v. Cut-

ter Laboratories, 338 F.Supp. 882 (E.D. Tenn.1970), the court held that state statutes of limitation do *not* apply to Title VII proceedings since Title VII contains a built-in limitation period, namely, Section 706(e) of the Act [42 U.S.C. § 2000e–5(e)], which provides, in pertinent part, that if the Commission fails to effect a remedy, it shall so notify the party aggrieved, and "a civil suit may, within 30 days thereafter, be brought against the respondent named in the charge." The court notes that this 30-day period [1] is jurisdictional and cannot be extended. Moreover, this limitation period serves a dual function: "first, it insures that an aggrieved individual will not file a suit until the Commission has had an opportunity to attempt conciliation. Second, it insures that an aggrieved individual will not be precluded from suit by inaction on the part of the Commission." *Jackson, supra,* at p. 885.

The result reached in *Jackson, supra,* appears to this court to be consistent with, and indeed, logically compelled by, a number of cases which have held that there are *but two* jurisdictional requirements to the bringing of a Title VII suit (and have thus implicitly rejected the contention urged by defendant herein, that Title VII lacks a limitation period and is, therefore, regulated by state statutes). Cunningham v. Litton Industries, supra (9th Cir. 1969); Miller v. International Paper, 408 F.2d 283 (5th Cir. 1969); Choate v. Caterpillar Tractor, 402 F.2d 357 (7th Cir. 1968); Sanders v. Dobbs House, 431 F.2d 1097 (5th Cir. 1970). These courts, in disposing of arguments which sought to interpose procedural roadblocks to the bringing of Title VII suits, have pointed out that an aggrieved employee has little or no control over the speed with which the Commission will act on his charge;[2] that the administration of a charge is likely to take several years rather than the several months originally anticipated by Congress; and that the administration of a charge by the Commission can *never result in detriment to the charging party.* (*Miller, supra*). In light of these facts, and of the desire of the courts and of Congress to give the fullest possible effect to administrative procedures for resolving Title VII disputes (Sanchez v. Standard Brands, 431 F.2d 455 (5th Cir. 1970)), it would indeed be anomalous to require a plaintiff to cut short the administrative process in order to protect himself from the running of a state statute of limitations.

This court, therefore, finding itself in agreement with *Jackson, supra,* and the cited immediately above authorities, holds that Title VII contains its own limitation period, and that, therefore, Title VII suits are not subject to the bar of state statutes of limitation. This result appears to us to be consistent with the clear language of Title VII of the Civil Rights Act of 1964 (specifically, Section 706[e]); with the great weight of authority; with the steady refusal of federal courts to construct technical procedural barriers to the hearing of Title VII claims on their merits (Sanchez v. Standard Brands, *supra*); with oft-quoted statement that administration of a claim by the Commission can never result in detriment to the charging party; and with the congressional policy in favor of utilizing administrative processes to the fullest while at the same time insuring eventual access to federal courts.

---

1. Now 90 days.

2. Commission regulations permit the charging party to demand a right-to-sue letter if, after 180 days, the Commission has been unable to resolve the dispute administratively. Defendant contends that plaintiff, in order to avoid the bar of the California statute of limitations, was required to demand such a letter within three years of the discharge. However, nothing in the regulations (or, for that matter, in the statutory scheme of Title VII) supports this contention; the regulations merely provide that an employee eager to pursue his claim need not wait interminably for final word from the Commission; not that an employee who wishes to utilize the administrative process to the fullest must cut short that process in order to protect his right to sue.

Defendant next contends that insofar as this suit seeks equal pay for equal work, it lacks equity and must be dismissed. Defendant argues that it is a prerequisite to a suit in equity (such as a Title VII proceeding) that there be no adequate remedy at law (Dairy Queen v. Woods, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44); that with respect to plaintiff's equal pay claim, federal and state equal pay laws have at all relevant times provided plaintiff with a complete legal remedy; that therefore, plaintiff was required to bring an action for equal pay under those statutes, which would have afforded defendant the right to jury trial, rather than under Title VII; and that the limitation period on the equal pay laws now having run, plaintiff is foreclosed from pursuing the equal pay claim in this proceeding. This argument is unconvincing.

■ Title VII of the Civil Rights Act of 1964, the first comprehensive federal legislation in the field of employment discrimination, overlaps, to some extent, the Equal Pay Act, the National Labor Relations Act, and the Railway Labor Act. In the early years of Title VII's existence, it was argued by those who sought to circumscribe the effect of the new law, that resort to federal courts under Title VII should be precluded by appropriate deference to other institutions already dealing with employment discrimination and to judicial decisions in actions brought under other anti-discrimination statutes. For example, it was argued that an employee must resort to the institutions provided by the R.L.A. before a suit could properly be maintained under Title VII (Bremer v. St. Louis S.W.R.R., 310 F.Supp. 1333 (E.D.Mo.1969); and it was also contended that an ·employee who had originally elected to pursue his grievance under another statute, or un-

der a collective bargaining agreement, was precluded from later proceeding under Title VII. (Norman v. Missouri Pacific R. R., 414 F.2d 73 (8th Cir. 1969) and Taylor v. Armco Steel Corp., 429 F. 2d 498 (5th Cir. 1970) (on proceeding under another statute);[3] Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969), and Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (Feb. 19, 1974) (on proceeding under a collective bargaining agreement)). These arguments, however, have been consistently rejected; and the clear principle has emerged that Title VII rights are *independent* of rights created by other statutes or by contract, and that where remedies overlap, a plaintiff may select the avenue of relief that seems to him most appropriate. (*Bremer, supra,* and other cases cited immediately above). (See, generally, Title VII and the Multiple Approaches to Eliminating Employment Discrimination, Hebert, Stanley P. and Reischel, Charles L., N.Y.U. Law Review, Volume 46 No. 3 (May, 1971). Thus, in the instant case, where plaintiff's claim is cognizable under both the equal pay laws and Title VII, she may pursue her claim under the latter statute as part of a comprehensive action, if she so chooses, provided only that she fulfill the two jurisdictional prerequisites to the bringing of a Title VII suit, i. e., timely filing of a charge with the Commission and filing of suit within 90 days of notice from the Commission of the right to proceed. 'Plaintiff herein having met both these requirements, this action is in no way barred and must proceed to a hearing on the merits.

A recent decision by the United States Supreme Court supports the conclusion here reached. In Alexander v. Gardner-Denver Co., 415 U.S. ·36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (Feb. 19, 1974), a case

3. In *Norman, supra,* the court allowed train porters to attack their job classification under Title VII on the ground that it was racially discriminatory even though other proceedings under the R.L.A. involving substantially identical issues had determined the is-

sue adversely to the porters. And in *Taylor, supra,* the Fifth Circuit similarly sustained an action under Title VII against a seniority system which had previously been held to be nondiscriminatory in a suit brought under the N.L.R.A.

involving the relationship between federal courts and the grievance-arbitration machinery of collective bargaining agreements, the Court held that an employee's submission of a claim to final arbitration under such an agreement could not foreclose his right to a trial de novo under Title VII. In reaching this holding, the Court pointed out that Title VII, which vests federal courts with "plenary power to enforce the statutory requirements" specifies with precision the jurisdictional prerequisites that an individual must meet before bringing a suit; that in the instant case, those requirements were met when plaintiff filed a timely charge with the Commission and received and acted on the Commission's statutory notice of right to sue; and that nothing in the statutory scheme suggests that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction. Moreover, the court noted that legislative enactments in the field of employment discrimination have long evinced a general intent to accord parallel or overlapping remedies against discrimination, and that the legislative history of Title VII, in particular, "manifests a congressional intent to allow an individual *to pursue independently* his rights under Title VII and other applicable state and federal statutes." (*Alexander*, at p. 1019 of 94 S.Ct.). emphasis added.

During Congressional debates on Title VII, an amendment was proposed to make Title VII the exclusive remedy for most unlawful employment practices. Congress rejected this amendment, preferring, in light of the range and complexity of discriminatory employment practices, to keep open *all* possible avenues of relief. (110 Cong.Rec. 13650–13652) (See also interpretive memo of Senator Joseph Clark, 110 Cong.Rec. 7207 (1964)). Thus, it has often been stated that Title VII was intended to supplement, rather than supplant, existing legislation in the field. Here, however, defendant suggests that Title VII rather than either supplementing or supplanting the equal pay laws, is to be *supplanted by them.* This suggestion flies in the face of the Congressional policy to keep available *all* channels of relief and is, hereby, rejected.

Moreover, Congress's purpose in enacting Title VII was to provide a comprehensive federal cause of action against employment discrimination, (earlier piecemeal legislation in the field having proved inadequate to combat the evil.) This purpose would clearly be defeated were plaintiffs to be required to sever from comprehensive Title VII complaints any claims potentially cognizable under other, narrower statutes.

We hold, therefore, that the existence of a less comprehensive statute under which plaintiff's equal pay claim was potentially cognizable does not foreclose her from pursuing that claim under Title VII, especially where, as here, that claim is but one of several claims (all cognizable under Title VII) alleging wide-ranging practices of discrimination, and is but part of a comprehensive remedy sought by plaintiff to eliminate those practices.

■ Defendant's final argument is that an equal pay claim is strictly a legal claim for damages, and that plaintiff cannot cloak it with an equity label and treat it on the equity side, thereby depriving defendant of a right to jury trial. (*Dairy Queen, supra.*) Defendant calls our attention to a recent U. S. Supreme Court decision, Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed. 2d 260, in which it was held that the Seventh Amendment guarantees a right to jury trial in an action under Section 812 of the Civil Rights Act of 1968 for racial discrimination in renting, the court noting that such a suit was a damages action to enforce "legal rights" within the meaning of the Court's Seventh Amendment decisions, and that the relief sought—actual and punitive damages—was the traditional form of relief offered in courts of law. The *Curtis* opinion, however, does not dictate a result different from the one we have

reached here. That Court did not go so far as to say that any award of monetary relief must necessarily be "legal" relief; and it specifically declined to express a view on the jury trial issue in the context of Title VII proceedings. However, the Court did point out that Courts of Appeal have characterized monetary relief under Title VII as an integral part of an equitable remedy (a form of restitution), and that the statutory language on which this characterization is based contrasts sharply with the language of Section 812 of the 1968 Act.

For the foregoing reasons, defendant's motion to dismiss the complaint is hereby denied.