C. R. JOHNSON, Hubert L. Henderson, Charles H. Cate, for and in behalf of themselves and all others similarly situated, Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendant.

Civ. A. No. CA–3–80–434–D.

United States District Court, N. D. of Texas, Dallas Division.

May 9, 1980.

Raymond C. Fay, Alan M. Serwer, Haley, Bader & Potts, Chicago, Ill., for plaintiffs.

Laurence A. Carton, Gardner, Carton & Douglas, Chicago, Ill. (James A. Velde, Gardner, Carton & Douglas, Chicago, Ill., of counsel), for defendant.

ORDER

ROBERT M. HILL, District Judge.

Came on for consideration plaintiffs' Motion to Strike a Portion of the Answer of Defendant. The court has considered the motion and the briefs of the parties and is of the opinion that the motion should be granted.

### I.  Background

The plaintiffs in this case are former commercial airline pilots who were forced to retire following their sixtieth birthdays. Before reaching age sixty, the plaintiffs were first pilots (also known as captains or pilots in command). Also in the cockpit of large commercial aircraft during each flight are second pilots and flight officers or flight engineers. Flight engineers, in contrast to pilots, are permitted to work beyond their sixtieth birthdays.

Plaintiffs sought to continue their employment with American in the position of flight officer/flight engineer. This request was refused by defendant American Airlines, Inc. ("American"). In response to this refusal, plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging that American had discriminated against them on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. They filed this lawsuit on July 3, 1979.

Defendant's answer includes a paragraph which reads as follows:

29. The relief sought by the plaintiffs would in effect permit them at age 60 to down bid to the position of flight officer, a position provided for in the collective bargaining agreement between American and the Allied Pilots Association. *Plaintiffs have failed to exhaust their applicable remedies within the Allied Pilots Association or under the Railway Labor Act as a condition precedent to bringing suit.*

(emphasis added) Plaintiffs have moved to strike the second sentence of Paragraph 29 from American's answer.

## II. *Motions to Strike—Generally*

Plaintiffs' motion to strike is brought under Rule 12(f) of the Federal Rules of Civil Procedure, which provides that "the court may order stricken from any pleading any insufficient defense." Such motions are to be granted only when the defense in issue is invalid as a matter of law. The motion admits all well pleaded facts, but matters outside the pleadings are normally not considered.

Although it has been said that 12(f) motions are "not favored" by the courts because of their potential as a dilatory tactic, they are "nonetheless 'a useful and appropriate tool' for weighing the legal implications to be drawn from uncontroverted facts." *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975), *quoting* 5 Wright and Miller, *Federal Practice and Procedure: Civil*, § 1381 (1969). Here, even accepting as true the facts alleged by defendant as the basis for its exhaustion defense, the defense of failure to exhaust union remedies is insufficient as a matter of law.

## III. *Exhaustion Requirements and Civil Rights*

American contends, through the questioned paragraph of its answer, that plaintiffs' ADEA claims cannot be maintained without *first* establishing, through union procedures, their right to be flight officers on retirement. Plaintiffs, however, urge that they have complied with the prerequisites to suit contained in the ADEA and that no other procedural prerequisites may be imposed on them.

Air carriers such as American and airline pilots such as the plaintiffs are subject to certain provisions of the Railway Labor Act. *See* 45 U.S.C. §§ 151–52, 154–63, and 181–87. The act makes it the duty of the carriers and their employees to maintain collective bargaining agreements and to attempt to settle all disputes arising out of the agreements. One such agreement relevant to this case is the Tripartite Agreement of 1965, which was entered into between American, the Allied Pilots Association ("APA"), and the Flight Engineers' International Association ("FEIA") pursuant to the Railway Labor Act.

The Tripartite Agreement arose out of a long-standing dispute between pilots and flight engineers as to who would fill the third cockpit crew position of large aircraft. Under the Tripartite Agreement, all flight engineers then employed were guaranteed priority in the third cockpit position until retirement, and all third crew members hired after July 1, 1964, were required to be pilots represented by the APA. It also provides that no flight engineer is to be furloughed or continued in furlough while any pilot or flight officer (pilot) is serving as a third crew member. The Tripartite Agreement was approved by the Secretary of Labor and the National Mediation Board on March 8, 1965. American maintains that the plaintiffs' claims to the position of third crew member are contrary to the Tripartite Agreement.

The interaction between the exhaustion requirements of union grievance procedures and civil rights statutes arises frequently. Only one reported case, however, appears to have considered the combination of the ADEA and Railway Labor Act, and the conclusions of that case are somewhat ambiguous. In *Criswell v. Western Air Lines, Inc.*, 21 E.P.D. ¶ 30,466 (C.D.Cal. 1979), the plaintiffs did submit grievances to the Western Airlines Pilots System Board of Adjustment ("System Board") based on the defendant's refusal to award them bids as DC–10 second officers; these grievances were denied. The court, while accepting the System Board's interpretation of the collective bargaining agreement, nevertheless denied defendant's motion for summary judgment, noting that "whether age was a substantial and determinative factor in the denial of the downbids remains a matter for litigation because of the genuine issues of material fact concerning the application and impact of the Pilot Agreement." *Id.* Thus the court appears to have foreclosed the possibility that the System Board's decision on the plaintiffs' entitlement to the position sought would bar plaintiffs' suit.

Absent controlling decisions under the ADEA, the court must turn to Title VII of the Civil Rights Act of 1964 and the Fair Labor Standards Act for analogy. *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir. 1977). The leading case discussing the relationship between arbitration and Title VII is *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which held that the federal policy favoring arbitration does not establish that an arbitrator's resolution of a contractual claim is dispositive of a statutory claim under Title VII. *Id.* at 45, n.6, 94 S.Ct. at 1018, n.6. The Court noted that

> Title VII does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements. It does, however, vest federal courts with plenary powers to enforce the statutory requirements; and it specifies with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit.

*Id.* at 47, 94 S.Ct. at 1019. *See also Smallwood v. National Can Co.*, 583 F.2d 419 (9th Cir. 1978); *Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1316 (7th Cir. 1974) ("Moreover, an exhaustion of remedies requirement does not appear to apply to claims for relief brought under any of the civil rights acts.").

The reason for placing decreased priority on arbitration in civil rights cases was explained by the Seventh Circuit:

> While we recognize that there is a burden placed on the defendant who must defend in two different fora, we also note that there may be crucial differences between the two processes and the remedy afforded by each. Also, as with unfair labor practice cases . . . the arbitrator may consider himself bound to apply the contract and not give the types of remedy which are available under the statute.

*Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 715 (7th Cir. 1969). *See also Alexander, supra*, 415 U.S. at 53, 94 S.Ct. at 1022; *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1155–59 (D.C.Cir. 1975) (historical analysis

of judicial deference to grievance procedures and exceptions thereto for "pervasive statutory schemes").

Courts have expressly considered the effect of the federal civil rights acts on the Railway Labor Act requirements. In *Piva v. Xerox Corp.*, 376 F.Supp. 242 (N.D.Cal. 1974), it was held that no exhaustion was required:

> [I]t was argued, by those who sought to circumscribe the effect of the new law, that resort to federal courts under Title VII should be precluded by appropriate deference to other institutions . . . . For example, it was argued that an employee must resort to the institutions provided by the [Railway Labor Act] before a suit could properly be maintained under Title VII . . . . These arguments, however, have been consistently rejected; and the clear principle has emerged that Title VII rights are independent of rights created by other statutes or by contract, and that where remedies overlap, a plaintiff may select the avenue of relief that seems to him most appropriate.

*Id.* at 246. The same conclusion was reached earlier by another court, which noted that the "Railway Labor Act is not basically a fair employment practice act nor has it been utilized as such." *Bremer v. St. Louis Southwestern R. Co.*, 310 F.Supp. 1333, 1336 (E.D.Mo. 1969). When the plaintiff seeks to assert a contractual right under the collective bargaining agreement or to resolve a minor labor dispute, exhaustion is required. *Id.* at 1336. But when the plaintiff asserts separate federal statutory rights, the exhaustion requirement is not applicable. *Id. See also Phillips v. Carborundum Co.*, 361 F.Supp. 1016, 1020 (W.D. N.Y. 1973) ("[R]emitting an employee to arbitration is favored only when the employee's substantial rights are derived from the collective bargaining agreement. When the employee asserts rights derived from federal statute, the presumption of comprehensiveness of the arbitral remedy is . . . rebutted.").

This is the import of the cases cited by American. All held the plaintiff's claim to

be essentially a question of interpretation of the collective bargaining agreement or a minor contract dispute. *See Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Machinists v. Central Air Lines*, 372 U.S. 682, 689, 83 S.Ct. 956, 960, 10 L.Ed.2d 67 (1963); *Pennsylvania R. Co. v. Day*, 360 U.S. 548, 550, 79 S.Ct. 1322, 1323, 3 L.Ed.2d 1422 (1959); *Brown v. American Airlines, Inc.*, 593 F.2d 652 (5th Cir. 1979); *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir. 1978), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1979); *Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29 (1st Cir. 1978). The thrust of plaintiffs' complaint in this case, however, is not a contract right but the right not to suffer from discrimination based on age. The fact that this determination may necessitate, as a collateral matter, the interpretation of a collective bargaining agreement does not require that plaintiffs pursue the union grievance procedure prior to bringing their ADEA claim.

In *McKinney v. Missouri-Kansas-Texas R. Co.*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), the plaintiff sued to enforce his rights as a veteran under the Universal Military Training and Service Act. The Supreme Court held that he was not obliged to pursue the grievance procedures of the collective bargaining agreement or the Railway Labor Act prior to bringing suit in district court:

> The rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement. Although the statute does not itself create a seniority system, but accepts that set forth in the collective bargaining agreement, it requires the application of the principles of that system in a manner that will not deprive the veteran of the benefits . . for which Congress has provided. Petitioner sues not simply as an employee under a collective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces.

*Id.* at 268–69, 78 S.Ct. at 1225. This reasoning was applied to a claim based on the Equal Pay provisions of the Fair Labor Standards Act in *Phillips v. Carborundum Co., supra*, at 1021.

American seeks to distinguish the Title VII exhaustion cases by noting that in those cases the defendants tried to force exhaustion of collective bargaining remedies for racial discrimination, the same conduct for which the plaintiffs sued under Title VII, while in this case the question to be arbitrated is the collateral issue of entitlement to flight engineer status. This distinction, however, works against rather than in favor of defendant's position. The Supreme Court noted in *Alexander, supra*, that an arbitrator's decision is entitled to greater weight when "provisions in the collective-bargaining agreement . . . conform substantially with Title VII" and when the arbitral decision "gives full consideration to an employee's Title VII" rights." *Id.*, 415 U.S. at 60, n.21, 94 S.Ct. at 1025, n. 21. Conversely, therefore, an arbitrator's decision on a collateral issue, excluding the allegations of age discrimination, would be entitled to even *less* weight than the arbitral determination at issue in *Alexander*, and there would be less rather than greater reason to require plaintiffs to exhaust their union remedies prior to filing their lawsuit.

Procedurally, this case is in a different posture from *Alexander*. There, plaintiff had arbitrated and lost; the defendant argued that this barred his claim. Here, American seeks to force plaintiffs to grieve their claim, arguing that should plaintiffs lose before the System Board "this controversy would be disposed of." As a practical matter, however, the posture of American and Gardner-Denver are the same: both urge that a decision adverse to plaintiff's position resulting from a union procedure precludes a federal district court from finding otherwise. This is not the law. "[C]ourts should be ever mindful that Congress, in enacting Title VII [and the ADEA], thought it necessary to provide a judicial forum for the ultimate resolution of

discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." *Alexander, supra*, at 60, n.21, 94 S.Ct. at 1025, n.21.

This is not to say that American cannot urge in defense that the refusal to allow plaintiffs to become flight engineers was based on the Tripartite Agreement, or some other factor not due to their age. *See, e. g.*, Answer, ¶¶ 26, 27. The court merely holds that no exhaustion is required prior to bringing suit, and that therefore the second sentence of paragraph 29 of American's answer is clearly invalid as a matter of law and thus insufficient.

For these reasons, the court holds that even taking as true the facts alleged in American's answer, there is no requirement that plaintiffs exhaust their applicable remedies within the Allied Pilots Association or under the Railway Labor Act as a condition precedent to bringing suit. Therefore, plaintiffs' motion to strike is granted.

It is so ORDERED.