**Luis M. de la ROSA SANCHEZ,**
**Plaintiff-Appellant,**

v.

**EASTERN AIRLINES, INC.,**
**Defendant-Appellee.**

**No. 77–1188.**

United States Court of Appeals,
First Circuit.

Argued Feb. 8, 1978.
Decided April 19, 1978.

Francisco Ponsa Flores, San Juan, P. R., with whom Francisco Ponsa Feliu, San Juan, P. R., Edda Ponsa Flores, and Lawrence E. Duffy, Rio Piedras, P. R., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, MOORE,* and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from a dismissal of a complaint on the grounds that the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, precludes jurisdiction in the district court. When the trial judge dismissed the action, there were two claims alleged. The first was that the defendant-appellee wrongfully and maliciously withheld disability pension payments from the plaintiff-appellant in the amount of $1,500 a month. In his brief and at oral argument, appellant waived his claim to these benefits and conceded "that all action taken with regard to a claim for relief as spelled out in the original complaint was correctly treated by the Court." Appellant's Brief at 5.

The second claim is stated in the complaint as follows:

The disability pension has been and continues to be withheld, as a deliberate device to force plaintiff to waive his rights to a day in court.

The defendant knew and know [*sic*] that the plaintiff needs his pension to live and has deliberately withheld it to force plaintiff into economic disaster.

The withholding of approved pensions, for any reason, is illegal under federal law.

Pursuant to the law of Puerto Rico, the deliberate breach of an obligation designed to cause damage to another is actionable ("dolo") 31 L.P.R.A. § 3018. Pars. 39–42 of Supplemental Amended Complaint.[1]

Harvey B. Nachman, Santurce, P. R., for plaintiff-appellant.

* Of the Second Circuit, sitting by designation.

1. On August 28, 1975, appellant filed a complaint in the district court. The court, acting on Eastern's motion, dismissed the complaint without prejudice. Prior to the entry of this order, plaintiff filed an amended complaint and the court vacated the order because it had not considered the amended complaint. The first claim for relief sought in the amended complaint is identical to the original complaint filed.

In determining whether or not the district court had jurisdiction, we must take the allegations of the second claim as set forth in the amended complaint as true.

Luis M. de la Rosa Sanchez was a captain of jet airliners for Caribbean Atlantic Airlines, Inc. (Caribair), when he was involved in an emergency landing resulting in loss of his hearing and speech. Shortly after the incident, de la Rosa was grounded. He filed a grievance with the Caribair Board of Adjustment in which he claimed compensation for his expenses incurred as a result of the injury, and for other alleged contractual rights. Appellee, Eastern Airlines, Inc. (Eastern), which had a management contract with Caribair, intervened in the proceedings. Eastern subsequently acquired Caribair and took over its personnel. Appellant, as an employee of Caribair, was integrated into Eastern's employment roster and placed on its disabled list as a result of which he accumulated credit towards retirement pay, though he drew no salary.

Prior to the integration of the Caribair operations into the Eastern system, Eastern engaged in negotiations with the Air Lines Pilots Association International (ALPA), the certified bargaining agent for the pilots of both Caribair and Eastern. The negotiations culminated in an agreement dated September 5, 1973, known as "Document No. 77", which became part of the collective bargaining agreement between Eastern and ALPA. It set forth the terms and conditions of employment for former Caribair pilots who had become part of the Eastern system. Section E, General, paragraph 8, of the Document provides:

> Former Caribair pilots who are currently receiving long term disability benefits shall continue to receive these benefits in accordance with the terms and conditions of the Plan under which these benefits are now being paid.

Eastern contended that the plaintiff never became entitled to pension benefits because he never reported that he was physically able to resume his job. It bases its position on section D, Retirement, paragraph 2 of Document No. 77:

> Former Caribair pilots shall become participants in the Eastern Pilot Retirement Plans on the effective date of their Eastern domicile category position award. However, if a former Caribair pilot is on sick leave, leave of absence or furlough on the effective date of his Eastern domicile category position award, he shall not be eligible for disability or minimum augmentation benefits until he is physically capable and available to assume a line flying assignment.

The Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.*, sets up mandatory procedures for the resolution of disputes which come within its coverage. The Act recognizes two kinds of disputes: "Major" disputes, RLA § 5, 45 U.S.C. § 155, are "disputes over the formation of collective agreements or efforts to secure them . . . [and] arise where there is no such agreement of where it is sought to change the terms of one . . . ." *Elgin, J. & E.R. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); a "minor" dispute, RLA § 3(1), 45 U.S.C. § 153(1), is one which "contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in the terms or to create a new one." *Elgin, supra,* 325 U.S. at 723, 65 S.Ct. at 1290.

RLA coverage was extended to air carriers in 1936 by enactment of Title II of the RLA, 45 U.S.C. § 184 *et seq.* It requires air carriers and their employees, acting through their representatives, to establish system boards of adjustment for the resolution of disputes between an air carrier and its employees over the interpretation and application of the parties' collective bargaining agreement. *International Association of Machinists v. Central Airlines, Inc.,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). These boards have "exclusive primary jurisdiction," *Pennsylvania R. Co. v. Day,* 360 U.S. 548, 552, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959), and they are the "mandatory, exclusive, and comprehensive system for resolving grievance disputes." *Locomotive Engineers v. Louisville & Nash-*

*ville R. Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963). No federal or state court has jurisdiction over the merits of any employment dispute subject to determination by a system board of adjustment. *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Locomotive Engineers, supra,* 373 U.S. at 37, 83 S.Ct. 1059; *Pennsylvania R. Co., supra,* 360 U.S. at 552–554, 79 S.Ct. 1322 at 1324-1325; *Slocum v. Delaware, La. & W.R. Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); *International Association of M. & A.W. v. Northeast Airlines,* 473 F.2d 549, 554–555 (1st Cir.), *cert. denied,* 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 85 (1972). *See also International Association of Machinists and Aerospace Workers, etc. v. Northeast Airlines, Inc. et al.,* 536 F.2d 975, 977 (1st Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 328 (1976).

■ Plaintiff here seeks to make an end-run around the jurisdictional scope of RLA by the use of an ingeniously framed complaint alleging a tort. But getting down to basics, it becomes obvious that this action had its genesis in a pension dispute. The first claim sought $1,500 a month from Eastern in addition to the Caribair pension payments. That claim also uses the words "wrongfully" and "maliciously" to characterize Eastern's refusal to pay the pension claimed, obviously an attempt to avoid the jurisdictional bar of the RLA. We agree with the observation of the district court in its unpublished opinion.

The fact that plaintiff characterizes his claim as a tort action for malicious deprivation of benefits accrued under the collective bargaining agreement does not save it from the act's mandatory provisions for the processing of grievances.

The second claim falls for the same reason. Eastern eventually did agree to and did pay plaintiff the Caribair pension. Plaintiff alleges that he was automatically entitled to this pension and that defendant refused to pay it "for the sole purpose of having him reduced to a state of pauperism" Par. 32 of Amended Complaint. It is further alleged "on April 30, 1976, plaintiff's counsel was informed by defendant's counsel that the defendant was willing to pay the minimal pension, retroactive to September 15, 1975, *provided* that this action be dismissed." Par. 36 of Amended Complaint. It is plaintiff's position that this agreement to pay contingent on the dropping of plaintiff's district court action constituted actionable wrongful conduct by the defendant. Apart from the fact that the termination of litigation is often a condition of settlement, this overlooks the fact that the Caribair pension payments were not automatically due plaintiff. Plaintiff alleged in his original complaint and in the first cause of action of his amended complaint that he filed a grievance against Caribair with the Pilots System Board of Adjustment on November 5, 1970, that Eastern Airlines intervened in plaintiff's grievance proceedings and required him to be examined by four of their appointed doctors, and that on March 8, 1973, it was determined that plaintiff was not disabled and would not be eligible for the compensation sought. Pars. 8, 9, 10 of Amended Supplemental Complaint.

■ The determination of whether plaintiff was entitled to any pension payments from Caribair and/or Eastern was exclusively for the Pilots System Board of Adjustment. In order for the district court to decide whether there had been wrongful and malicious withholding of Caribair pension payments, it would have to determine whether or not plaintiff was entitled initially to a Caribair pension. This was beyond its jurisdiction by virtue of the RLA.

The following language in *Andrews v. Louisville & Nashville R. Co., supra,* 406 U.S. at 323–324, 92 S.Ct. at 1565, is controlling:

The fact that petitioner characterizes his claim as one for "wrongful discharge" does not save it from the Act's mandatory provisions for the processing of grievances. Petitioner argues that his election to sever his connection with the employer and treat the latter's alleged breach of the employment contract as a "discharge" renders his claim sufficiently different

from the normal disputes over the interpretation of a collective-bargaining agreement to warrant carving out an exception to the otherwise mandatory rule for the submission of disputes to the Board. But the very concept of "wrongful discharge" implies some sort of statutory or contractual standard that modifies the traditional common-law rule that contract of employment is terminable by either party at will. Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a "wrongful" one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.

The same rationale is applicable here. The only source of plaintiff's claim is the alleged wrongful refusal of Eastern to pay the Caribair pension.

■ Plaintiff also claims that pension rights, at least from January of 1975, were not the exclusive province of the Pilots System Board. It is his contention that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a) and (f) supersedes the RLA. This claim is completely without merit. ERISA specifically provides:

> Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 111 [29 U.S.C. § 1031] and 507(b)) [29 U.S.C. § 1137(b)] or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d).

*Affirmed.*